UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

x

UNITED STATES OF AMERICA

V. 18 CR 802-04 (CM)

JACINTO GARCIA,

Defendant.

x

DECISION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

McMahon, C.J.:

Jacinto Garcia was charged with participating in a conspiracy to distribute and possess with intent to distribute one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846. The charges arose from the defendant's membership in a drug trafficking organization engaged in the sale of street level amounts of heroin out of a building located in upper Manhattan. (PSR ¶ 9).

On June 4, 2019, Garcia pleaded guilty to the lesser included offense of participating in a conspiracy involving the distribution of 100 grams and more of heroin, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 846.

On September 12, 2019, the Court sentence defendant to 72 months' imprisonment. (Sentencing Tr. 13:17-14:11).



Garcia is currently serving his sentence in the low security federal correctional facility at Fort Dix, New Jersey. According to BOP records, he has completed approximately 25% of his 72 months sentence, and has a projected release date of January 28, 2024.

On April 30, 2020, Garcia filed an emergency motion for compassionate release asking the Court to allow him to serve the remainder of his sentence in home confinement, pursuant to 18 U.S.C. § 3582(c)(1)(A)(I). Garcia says that he should be released because he is at a high risk for infection of COVID-19 based on his "age, asthma, high blood pressure, high cholesterol, partially clogged artery in his heart and his diminished lung capacity from his bout with cancer." (Def. Br. at 2). He claims that these medical conditions provide "extraordinary and compelling" reasons warranting compassionate release, as that term is defined by Application Note 1(A) to U.S.S.G. § 1B1.13. (Def. Br. at 3-4).

The Government opposes Garcia's motion arguing that (1) it is premature because he has failed to exhaust his administrative remedies with the BOP, as required by statute, and (2) even if he were deemed to have exhausted, he has failed to demonstrate an extraordinary and compelling reason justifying compassionate release.

**Compassionate Release Under 18 U.S.C. § 3582(c)**

Section 3582(c) begins with the principle that "a court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also United States v. Goode*, No. 14 Cr. 810 (CM), 2020 WL 58272, *1 (S.D.N.Y. Jan. 6, 2020); *United States v. Israel*, No. 05 Cr. 1039 (CM), 2019 WL 6702522, *1 (S.D.N.Y. Dec. 9, 2019). Prior to the enactment of the First Step Act, a court could not modify a defendant's duly-imposed sentence on compassionate release grounds unless it received a motion from the BOP asking that the court consider such modification. *See, e.g., United States v. Goode*, 2020 WL 58272 at *1 (citing U.S.S.G. § 1B1.13

Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement) (Effective Nov 1, 2006; amended effective Nov. 1, 2007; Nov 1, 2010; Nov. 1, 2016; Nov. 1. 2018)); *Stewart v. United States*, 13 Civ. 5279 (JGK), No. 02 Cr. 395 (JGK), 2013 WL 4044756, *3-6 (S.D.N.Y. Aug. 9, 2013); *United States v. Iosifidis*, No. 13 Cr. 170 (JFK), 2016 WL 3267329, *2 (S.D.N.Y. June 9, 2016).

On December 21, 2018, Congress passed the First Step Act, Pub. L. No. 115-391, which amended 18 U.S.C. § 3582(c)(1) to permit a court to consider a defendant's motion for compassionate release following the exhaustion of his or her administrative remedies with the BOP or 30 days after submitting a request to the appropriate Warden, whichever is sooner:

> The court may not modify a term of imprisonment once it has been imposed except that, . . . the court, upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment…

18 U.S.C. § 3582(c)(1)(A). The First Step Act did not amend the eligibility requirements for compassionate release, which are set forth in 18 U.S.C. § 3582(c)(1)(A) and Section 1B1.13 of the United States Sentencing Guidelines. The court can only modify a sentence if, "after considering the factors set forth in section 3553(a) to the extent they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction," 18 U.S.C. § 3582(c)(1)(A)(i); or that the defendant is at least 70 years old and has served at least 30 years in prison, among other things. 18 U.S.C. § 3582(c)(1)(A) (ii). In either case, the proposed reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The Application Notes to Section 1B1.13 describe the circumstances under which "extraordinary and compelling reasons exist." U.S.S.G. § 1B1.13 Application Note 1. These

include an assessment of the defendant's medical condition and his or her age:

> (A) Medical Condition of the Defendant—
>
> > (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end- stage organ disease, and advanced dementia.
> >
> > (ii) The defendant is—
> >
> > > (I) suffering from a serious physical or medical condition,
> > >
> > > (II) suffering from a serious functional or cognitive impairment, or
> > >
> > > (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant – The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 Application Note 1.

Garcia's motion is predicated on his medical condition, in combination with the present COVID-19 pandemic.

The defendant bears the burden of proving that he is entitled to relief under 18 U.S.C. § 3582. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease); *United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010) (same).

**Covid-19 and the Attorney General's Guidance to BOP**

The world is presently in the grip of a pandemic due to the new coronavirus that causes the viral disease known as COVID-19. In light of this unprecedented crisis, and while

recognizing the ability of the Bureau of Prisons to deal with COVID-19 outbreaks within its facilities, the Attorney General has directed the Bureau of Prisons, when assessing compassionate release applications, to prioritize the transfer of incarcerated inmates to home confinement "where appropriate" to decrease the risks to their health. In assessing which inmates BOP should consider seriously for compassionate release, the Bureau is expected to consider:

- The age and vulnerability of the inmate to COVID-19, in accordance with the Centers of Disease Control and Prevention (CDC) guidelines;
- The security level of the facility where the inmate resides, with priority given to those residing in low and medium security facilities;
- The inmate's conduct in prison;
- The inmate's score under PATTERN, with inmates who have anything above a minimum score not receiving priority treatment;
- Whether the inmates have a verifiable re-entry plan that would prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face at his or her BoP facility; and
- The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community.

BOP is specifically directed not to grant home confinement when doing so would increase, rather than decrease an inmate's risk of contracting COVID-19; it is directed to grant home confinement only when BOP has determined—based on the totality of the circumstances—that transfer to home confinement is not likely to increase the inmate's risk of contracting COVID-19.

The Attorney General's directive is to an institution within the Executive Branch that is under his direct supervision. It has no binding force on the Judiciary. However, it is prudent to

consider the factors that the Attorney General finds to be important when a judge is assessing a compassionate release motion directed to his or her discretion.

**Garcia has Exhausted His Administrative Remedies in the BOP**

On April 2, 2020, Garcia's attorney Ken Womble emailed a petition for compassionate release to the warden of FCI Fort Dix on behalf of Garcia. (Def. Reply Letter at 1). The petition stated *inter alia*:

> Mr. Garcia seeks a reduction in sentence based on his medical issues, specifically his age (62) and his condition as a severe asthmatic after battling lung cancer in 2015, a battle that resulted in portions of his lung being removed to extract a tumor. These medical issues place him at significantly greater risk of contracting COVID-19 and/or suffering acutely (i.e. death) if he does contract this virus.

(Womble Request to Warden dated April 2, 2020).

The Warden composed a letter that same day (April 2. 2020) addressed to counsel stating that Program Statement 5050.50 only allows the facility to accept a petition for compassionate release from an inmate, not from an inmate's attorney. (*See* Govt Opp. Letter, Exhibit B). However, Mr. Womble says that he never responded to the Warden's April 2, 2020 letter because he only first learned of the letter's existence on May 4, when the Government made mention of it in its opposition papers. *Id.*

Mr. Womble says that the first communication he received from Fort Dix was an April 17 email (1) confirming receipt of the April 2, 2020 petition for compassionate release, but (2) requesting clarification of which provision supported the request. (Def, Reply Letter, Exhibit A). Counsel says he provided the necessary clarification in a letter dated April 22 (*See* Govt Opp. Letter, Exhibit C), even though he believed no clarification was necessary, given that the basis for released was clearly set out in his April 2 request. (Def. Reply Br. At 2).

The notion that the BOP is authorized to reject a petition for compassionate release filed

by an inmate's attorney instead of by the inmate is absurd. According to the federal regulation, the BOP is specifically required to process a request for compassionate release made "by another person on behalf of an inmate in the same manner as an inmate's request." *See* 28 Code of Federal Regulations § 571.61(b). Accordingly, there can be no dispute that April 2, 2020 is when Garcia's 30-day clock began to run.

As for the substantive sufficiency of the April 2 petition, the petition satisfies the pleading requirements of 28 CFR § 571.61(a)(1) and (2)—which requires a petition to (1) set forth the extraordinary or compelling circumstances that the inmate believes warrant consideration, and (2) a post release plan. Garcia's petition to the BOP plainly states that he is requesting a reduction because he is 62 years old and in poor health, and as a result has "a greater risk of contracting COVID-19 and/or suffering acutely (i.e. death) if he does contract this virus." The petition also provides a release plan: Garcia would remain in home confinement at his son's home in Belleville, New Jersey.[1] (Womble Request to Warden dated April 2, 2020).

Accordingly, thirty days having expired since Garcia filed his motion for compassionate release with the BOP with no decision by the warden, his compassionate release motion is now properly before this court.

---

[1] Garcia expands on this "plan" in the motion he filed in the district court: "We urge the Court to grant compassionate release and order the BOP to transfer Garcia to home confinement immediately (overriding the "Kafkaesque" 12 14-day quarantine period mandated by Attorney General William Barr). The Garcia family has the following plan in place:

- Garcia's son, Dennis, would pick up his father from FCI Fort Dix in his vehicle.
- Dennis Garcia would wear a mask and gloves and provide his father with a mask and gloves for the journey to the home of Jacinto Garcia's sister, Manuela Garcia, and her husband, in Newark, New Jersey.
- Manuela Garcia and her husband live in a two-bedroom townhome with an extra bedroom that would serve as Jacinto Garcia's dedicated room for the pendency of his home confinement.
- Upon his arrival at Manuela Garcia's home, Jacinto Garcia would be placed in quarantine for fourteen days, and would have no contact with anyone.

(Def Br. at 3, ECF docket #187).

**Extraordinary and Compelling Circumstances**

Garcia claims that "his age, underlying respiratory health conditions and numerous comorbidities place him at high risk of severe illness and death should he contract the COVID-19 virus that has come to Fort Dix, constituting an extraordinary and compelling reason for compassionate release." (Def Br. at 3, ECF docket #187).

Garcia argues that at 62 years old—two and half years short of the 65-year old "high risk" metric cited by the CDC—his age is still a significant risk factor. He points out that the median age for 5,700 COVID-19 hospitalizations in the New York City area was 63; the mortality rate rose steadily with age, and was 18.7% for those in Garcia's group (men aged 60-69); and those 60 and older. Citing Richardson et al., Presenting Characteristics. Comorbidities, and Outcomes Among 5700 Patients Hospitalized with COVID-19 in the New York City Area (Apr. 22, 2020) ("JAMA, April 22 Report"), available at hitps://bit.ly/3eNgvo3.

As for his respiratory and other health conditions: Garcia suffers from asthma for which BOP physicians prescribed both an Albuterol quick-relief inhaler as well as an Asmanex daily-use inhaler; has diminished lung capacity as a result of a 2015 lobectomy to remove a cancerous tumor; a partially clogged artery in his heart, for which he takes a blood thinner; and is on medication to control his high blood pressure and high cholesterol. (*See* BOP Medical Records, Govt Opp., Ex. D). He is not in great health.

Garcia refers to reports by the CDC and other medical authorities that have found that persons suffering from these conditions, taken separately (most particularly asthma), but certainly cumulatively, are at a greater risk than the general population of contracting COVID-19, and suffering a more severe outcome if actually contracting the virus. *See e.g.*, Richardson et al., *supra*. Garcia also cites various district court cases where judges have opined that COVID-19

presents a heightened risk for incarcerated defendants ... with respiratory ailments such as asthma. *See e.g. United States v. Hernandez*, No. 18 Cr. 834 (PAE), 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020).

Garcia argues that, given his risk factors and the emergence of COVID-19 at Fort Dix, he has demonstrated "extraordinary and compelling reasons" to grant him compassionate release. He sets out in his motion various statements in the press attributed to unidentified sources, or statements regarding facilities that are not managed or controlled by BOP. (Def. Br. at 14). And in his reply papers, he offers a declaration from Dr. Joe Goldenson, a correctional medical physician with over 33 years of experience. Dr. Goldenson is of the opinion that "persons currently detained at FCI Fort Dix are at significantly greater risk of contracting COVID-19 than if they were permitted to shelter in place in their home communities:

> It is my professional opinion that those who are medically vulnerable need to be moved out of FCI Fort Dix to the absolute maximum extent possible. In addition, the overall population needs to be significantly lowered to reduce the density in the jails to allow for adequate social distancing, minimize the strain on the jail's medical care system, ensure adequate space is available for necessary quarantining.

*See* Declaration of Dr. Joe Goldenson, Def. Reply, Exhibit E. Counsel laments: "The truth is that all of the actions that I can take to protect myself and my family are almost entirely unavailable to Jacinto Garcia. The very nature of a prison makes mitigating the spread of the virus . . . an almost impossible task." Def. Reply Br. at 5-6.

The Government counters defendant's argument by touting the massive Federal Bureau of Prisons COVID-19 Action Plan[2] to deal with the COVID pandemic, and lauds its success. I will not repeat what appears in the Government's papers; in particular, because I do not want to be seen as adopting the BOP's view of its response to the pandemic. What is relevant for our

[2] Federal Bureau of Prisons COVID-19 Action Plan, Available at https://www.bop.gov/resources/news/20200313_covid-19.jsp (last visited May 4, 2020).

purposes are conditions at Fort Dix, the facility where Garcia is housed. Whatever one may think of the situation in other BOP facilities, Fort Dix is not a facility that has seen a massive outbreak of COVID-19. With 2,936 inmates, it has only 40 documented cases as of May 4. *See* https://www.bop.gov/ coronavirus/. And all of the inmates with documented cases are housed in the Satellite Camp. Garcia is housed in the West Compound, where no inmates with documented cases are housed. According to defendant's post-release plan, if he were released he would be residing with his sister and her husband in a two-bedroom apartment in Newark, New Jersey—a relative COVID-19 hot spot, where there have been 6,332 confirmed cases of the virus, and 491 deaths. Garcia fails to convince me that he be safer in Newark than incarcerated at Fort Dix.

Garcia also presents a very special case when it comes to considering his compassionate release motion, because his personal history suggests that he will not take care of himself or behave in a manner that would lessen the possibility of his exposure to the virus. The presentence report prepared for the Court at the time of sentencing detailed Garcia's failure to control his asthma and other medical conditions—the conditions that he says increase his COVID-19 risk—while at liberty. After undergoing a medical procedure to treat his cancer in 2015, Garcia refused to comply with his doctors' recommendation to participate in chemotherapy. (PSR p. 27). Garcia also continued to abuse heroin and cocaine to a significant degree during the time he was being treated for cancer in 2014/15 and up until the time of his arrest. (*Id.*) (describing how the defendant's daily cocaine and heroin use have continued throughout much of his adult life).

And now—while incarcerated at FCI Fort Dix, and arguably receiving the most attentive and comprehensive health care that he has received in a long time—Garcia has refused to accept much of what has been recommended by doctors to address his health concerns. In October

2019, the defendant refused to undergo a colonoscopy or a prostate examination. (*See* Govt Br., Ex. D at pp. 175-76). And while he now complains about the risks he faces for infection by COVID-19, Garcia also refused to get vaccinated for the flu. (*Id.* at pp. 117, 177).

The defendant's past and present behavior paint a picture of someone who is not, and never has been, able to alter his lifestyle for the sake of his overall health. Nothing suggests he will conform his post-release behavior to mitigate the risks of COVID-19. It is not idle musing to suggest Garcia may be safer at Fort Dix, where authorities provide him with regular health care and keep those infected with COVID-19 isolated, than at liberty in Newark, where he would have to manage his healthcare on his own, and where compliance with social distancing and mask requirements would be strictly voluntary.

As for the § 3553(a) factors (the same factors the Court considered in imposing the defendant's original sentence), those factors continue to justify Garcia's sentence today, and weigh against his request to be released. Garcia has an extremely long criminal history, dating back to 1981. By his own admission he has been using cocaine and heroin for much of his life and has been engaged in the drug trade since the 1990s. (PSR p. 27). Garcia has been unable or unwilling to abide by the rules of society for extended periods of time without breaking the law. (*Id.*) At sentencing, the Court noted the defendant's participation in what the Court characterized as a "vicious drug ring" that had plagued the community in which it operated "for a very long time." (Tr. 12:19-21).

Moreover, the sentence reduction now sought by the defendant, after spending less than a quarter of his 72-month sentence in prison, would fail to satisfy any of the purposes of sentencing—here, principally the seriousness of the offense, the defendant's role, and the need for specific and general deterrence. Prior to sentencing, the Probation Department issued its

report for the Court calculating Garcia's Sentencing Guidelines range to be 168-210 months.' Probation recommended that the Court impose a variance sentence of 72 months, accounting for (1) defendant's role in the offense, not because his role was insignificant (it was not; he was a manager of street sellers), but because his involvement was motivated primarily by a need to feed his addiction to heroin, and (2) his age and physical ailments, including his 2014 bout with cancer. I agreed with the Probation Department's recommendation and sentenced Garcia to 72 months' imprisonment, saying *inter alia*: "But rather than get a compassionate release motion from you 10 years down the pike, I think I should recognize the true extent of your role in this conspiracy." Sentencing Tr. 13:17-14:11, Dkt. No. 99.

While I do not disagree with Dr. Goldenson that "overall [prison] population needs to be significantly lowered to reduce the density in the jails to allow for adequate social distancing, minimize the strain on the jail's medical care system, and ensure adequate space is available for necessary quarantining" (an uncontroversial goal, universally shared by medical professionals), Mr. Garcia is not the person I am prepared to release to meet that goal.

The motion for compassionate release is denied.[3]

[3] The Court notes that defendant requests throughout his papers that the Court convert the custodial portion of his sentence to home confinement—something not authorized by statute. The statute provides that a court "may not modify a term of imprisonment once it has been imposed," except that, as relevant here, a court "may reduce the term of imprisonment" if the requirements of compassionate release are satisfied. 18 U.S.C. § 3582(c)(1)(A). The same language is used in § 3582(c)(2), the provision that governs when the United States Sentencing Commission has retroactively lowered a Sentencing Guidelines range. If certain requirements are met, a court "may reduce the term of imprisonment" imposed on such a defendant. The Supreme Court has explained that a court's authority under § 3582(c)(2) is "limited" to the power to "reduce" a term of imprisonment. *Dillon v. United States*, 560 U.S. 817, 825 (2010). "By its terms, § 3582(c)(2) does not authorize a sentencing or resentencing proceeding. Instead, it provides for the modification of a term of imprisonment by giving courts the power to 'reduce' an otherwise final sentence in circumstances specified by the Commission." *Id.* (internal quotation marks and alterations omitted); *see also United States v. Urso*, 2019 WL 5423431, at *1 (E.D.N.Y. Oct. 23, 2019) (holding that § 3582(c) "authorizes the court to modify a term of imprisonment, it does not authorize the court to alter the method of incarceration."). To the extent the defendant's proposal is characterized as a functional grant of bail, or a grant of a furlough, or a court-ordered re-designation of the location at which a sentence will be served—this Court is similarly without authority to order. *See United States v. Credidio*, No. 19 Cr. 111 (PAE), Dkt. No. 66 (S.D.N.Y. Apr. 2, 2020) (concluding, in ruling on motion for compassionate release under § 3582(c) and/or habeas corpus under § 2241, that

This constitutes the decision and order of the Court

Dated: May 12, 2020

Colleen McMahon
Chief Judge

BY ECF TO ALL PARTIES

the court is "powerless to order Ms. Credidio temporarily released from custody until circumstances improve," but observing that BOP does have such authority including furloughs under § 3622, among other grounds).